951 F.2d 363
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Stanton FRASER, Defendant-Appellant.
 No. 91-50105.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Sept. 9, 1991.
Decided Dec. 20, 1991.
 
 Before BEEZER, CYNTHIA HOLCOMB HALL and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Stanton Fraser appeals the sentence imposed upon him after he pleaded guilty to conspiracy in violation of 18 U.S.C. § 371.
 
 
 3
 * Fraser pleaded guilty to conspiring to violate 18 U.S.C. § 474 by creating and possessing counterfeit plates and bearer obligations of the United States Treasury. When Fraser was arrested, he possessed photographic negatives of Federal Reserve notes, negatives of serial numbers and Treasury seals, metal printing plates bearing images of $20 and $100 notes, and $195,240 in incomplete, poorly-printed counterfeit currency.
 
 
 4
 To determine Fraser's offense level, the district court looked first to Sentencing Guidelines section 2X1.1.[1] Pursuant to section 2X1.1(a), the district court next looked to section 2B5.1 which establishes the offense level for the substantive offense of counterfeiting. Under section 2B5.1, the base offense level is nine plus an increase reflecting the face value of the counterfeit calculated from the table at section 2F1.1. The district court increased Fraser's offense level by seven levels based upon the amount of counterfeit found in his possession when he was arrested.
 
 
 5
 The district court reduced Fraser's offense level by two points to reflect acceptance of responsibility, resulting in an offense level of 14. The district court sentenced Fraser to fifteen months custody (the minimum Guidelines sentence) and three years supervised release.
 
 II
 
 6
 We review the district court's interpretation of the Sentencing Guidelines de novo. United States v. Howard, 894 F.2d 1085, 1087 (9th Cir.1990). This court accords "due deference" to the district court's application of the Guidelines to the facts, but only reviews findings of fact for clear error. Id. (citing 18 U.S.C. § 3742(e)).
 
 
 7
 * Fraser asserts that his offense level should not have been adjusted upward under section 2B5.1(b)(1) because he produced no passable counterfeit bills. Section 2B5.1(b)(1), however, does not require that the counterfeit be passable. " 'Counterfeit' ... means an instrument that purports to be genuine but is not, because it has been falsely made or manufactured in its entirety." U.S.S.G. § 2B5.1, comment. (n. 2). Section 2B5.1(b)(2), in contrast to subsection (b)(1), requires that the counterfeit be capable of escaping detection when subject to minimal scrutiny. See U.S.S.G. § 2B5.1, comment. (n. 3) ("Subsection (b)(2) does not apply to persons who ... produce items that are so obviously counterfeit that they are unlikely to be accepted even if subjected to minimal scrutiny.").
 
 
 8
 Absent contrary legislative history, we presume that the distinction between subsections (b)(1) and (b)(2) reflects the intention of the Sentencing Commission. See Russello v. United States, 464 U.S. 16, 23 (1983) (" '[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' ") (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir.1972)). If anything, the legislative history supports our reading. The Sentencing Commission considered adding another application note stating that "discarded defective items" were not to be counted for purposes of subsection (b)(1). See United States Sentencing Commission, Sentencing Guidelines for United States Courts; Notice of Proposed Amendments and Additions; Hearing and Request for Public Comment (pt. 2), 54 Fed.Reg. 9121, 9132 (1989). The Commission chose not to submit this proposed amendment to Congress.
 
 
 9
 The district court found, by adopting the presentence report, that Fraser was not merely experimenting but "was attempting to proceed with the scheme and produce better quality counterfeit." This finding is not clearly erroneous. We therefore hold that the adjustment under section 2B5.1(b)(1) was appropriate because section 2X1.1(a) provides that any "intended offense conduct" should be considered in sentencing for a conspiracy conviction.
 
 B
 
 10
 Fraser next argues that he was entitled to a three-point reduction pursuant to section 2X1.1(b)(2)[2] because he had not completed "all the acts [he] believed necessary" to achieve his illegal goal. Fraser argues that the district court erred by confusing completion of the conspiracy with completion of the substantive offense. See United States v. Rothman, 914 F.2d 708, 710-11 (5th Cir.1990) ("object offense" in section 2X1.1(b)(2) refers to near-completion of the substantive offense and not the conspiracy offense); U.S.S.G.App. C p 411, at 238-39 (Nov. 1991) (replacing "object offense" throughout section 2X1.1 with "substantive offense"). According to Fraser, he should have received the three-point reduction because he was not close to completing the goal of printing passable Treasury notes.
 
 
 11
 Fraser's argument fails, however, because 18 U.S.C. § 474 has no intent or passability requirement. Paragraph five of section 474 provides that "[w]hoever prints, photographs, or in any other manner makes or executes any engraving, photograph, print, or impression in the likeness of any such obligation or any security, or any part thereof" is guilty of counterfeiting. Section 474 is more sweeping in its breadth than other counterfeiting statutes punishing mere possession. See United States v. Johnson, 434 F.2d 827, 829-30 (9th Cir.1970) (holding that pinkish, one-sided, badly printed bills not punishable under statute requiring intent to defraud and distinguishing cases based on broader section 474); see also United States v. Raynor, 302 U.S. 540, 545 (1938) (Congress enacted predecessor of section 474 to increase protection of currency and therefore struck the intent element from some of its provisions). Thus, since Fraser had printed reproductions of one side of federal reserve notes, he had violated section 474 even though the quality of the bills was very poor. The district court's refusal to reduce his offense level under U.S.S.G. § 2X1.1(b)(2) was therefore correct.[3]
 
 
 12
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Section 2X1.1 provides that the offense level for conspiracy is "[t]he base offense level from the guideline for the object offense, plus any adjustments from such guideline for any intended offense conduct that can be established with reasonable certainty." United States Sentencing Commission, Guidelines Manual, § 2X1.1(a) (Nov. 1990)
 
 
 [2]
 Section 2X1.1(b)(2) provides: If a conspiracy, decrease by 3 levels, unless the defendant or a co-conspirator completed all the acts the conspirators believed necessary on their part for the successful completion of the offense or the circumstances demonstrate that the conspirators were about to complete all such acts but for apprehension or interruption by some similar event beyond their control
 
 
 [3]
 Fraser also argues that his sentence was imposed in violation of due process because the district court relied on materially false information. Fraser here assumes that the district court implicitly made a factual finding that the counterfeit instruments were passable. Our holding here renders his argument moot