**UNITED STATES of America,
Plaintiff–Appellee,**

**v.**

**Gregory Michael VAN BOOM,
Defendant–Appellant.**

**No. 91–10089.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 13, 1992.

Decided April 3, 1992.

Jacqueline Marshall, Ralls & Bruner, Tucson, Ariz., for defendant-appellant.

Robert L. Miskell, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before: REINHARDT, NOONAN and THOMPSON, Circuit Judges.

NOONAN, Circuit Judge:

Increasingly, the sentence has become the principal issue in a federal criminal appeal. In this case, the sentence is the entire issue—whether the penalty provided by the Sentencing Guidelines for bank robbery may be increased by the amount the robber unsuccessfully attempted to obtain. The district court imposed the increase. We affirm.

*BACKGROUND*

Gregory Van Boom, a former film script writer, developed an elaborate plan by which he might obtain money from a bank by pretending to have control of explosive devices he would detonate if his demands were not met. On July 13, 1990 he put his plan into operation at the Valley National Bank in Tucson, Arizona, of which he demanded $750,000. A FBI SWAT team arrested him before he could take possession of the money. He was indicted on two

counts and on November 28, 1990 pled guilty to the second, which charged that he, "by force and violence and by intimidation, attempted to take from persons and the presence of persons at the Valley National Bank on Two E. Congress Street, and did attempt to obtain by extortion, approximately $750,000 ... in violation of Title 18 United States Code, Section 2113(a)." The indictment tracked the language of the first section of 18 U.S.C. § 2113(a), "Bank Robbery and incidental crimes."

The probation report found that the appropriate guideline for an attempt to take money from a bank was Sentencing Guideline § 2B3.1(a) "Robbery" where the base offense level was 20. The probation report added two levels because the offense involved the attempted robbery of a financial institution. *Id.* § 2B3.1(b)(1). The report added an additional three points because Van Boom had displayed an object that "appeared to be a dangerous weapon." *Id.* § 2B3.1(b)(2). Finally, a further three levels were added because the offense involved the potential loss of more than $250,000 and less than $800,000. *Id.* § 2B3.1(b)(6)(D). The total offense level was 28, from which 2 was deducted for Van Boom's acceptance of responsibility. With a criminal history category I the guidelines indicated a prison sentence of 63 to 78 months.

On February 5, 1991, the district court sentenced Van Boom to 63 months to be followed by three years of supervised release. Van Boom appeals.

### ANALYSIS

Van Boom's central contention is that the presentence report, and the district court relying upon it, erred in treating the amount he demanded as "the loss" which should govern the sentence. Literally, there was no loss. He says that we should take the Sentencing Guidelines at their word.

The government's response is as follows: Under the Application Note 3 of § 2B3.1 (Robbery, Extortion and Blackmail) the "valuation of loss" is "discussed in the Commentary to § 2B1.1." This section, Application Note 2, states: "In cases of partially completed conduct, the loss is to be determined in accordance with the provisions of § 2X1.1 (Attempt, Solicitation or Conspiracy). E.g., in the case of the theft of a government check or money order, loss refers to the loss that would have occurred if the check or money order had been cashed. Similarly, if a defendant is apprehended in the process of taking a vehicle, the loss refers to the value of the vehicle even if the vehicle is recovered immediately." In other words, "loss" can on occasion mean "potential loss." So, the government contends, it is with attempted robbery.

Turning then to 2X1.1, whose heading reads "Attempt, Solicitation or Conspiracy (Not Covered by a Specific Offense Guideline)" it is stated that the base offense level is the same in these cases as the base offense level "for the object offense, plus any adjustments from such guidelines for any intended offense conduct that can be established with reasonable certainty."

Application Note 1 to § 2X1.1 observes that certain attempts are expressly covered by other offense guidelines and names a number of such guidelines. The guideline for robbery is not mentioned. Van Boom, however, contends that the robbery guideline already covers attempted robbery. In particular, he asserts that subsection 2B3.1(b)(1) specifically provides for the crime of attempted robbery. Van Boom quotes subsection 2B3.1(b)(1) as it appears in the Manual in effect on November 1, 1989: "If the offense involved robbery or attempted robbery of the property of a financial institution or post office, increase by two levels."

Van Boom cites the wrong Manual. He is to be sentenced according to the Guidelines in effect at the date of sentencing if the latter has clarified an earlier statement. 18 U.S.C. § 3553(a)(4) and (5). The slightly different wording of the edition of the Manual actually applicable to Van Boom removes doubt about the proper interpretation: "If the property of a financial institution or post office was taken, or if the

taking of such property was an object of the offense, increase by two levels." United States Sentencing Commission, *Guidelines Manual*, § 2B3.1(b)(1) (Nov.1990). "Attempted robbery" is not expressly mentioned.

■ But there is a better argument for the contention that the robbery guideline already covers attempted robbery. 18 U.S.C. § 2113 defines the crime of bank robbery as committed by one who "takes or attempts to take ... any property or money ... in the care ... of any bank." The attempt to rob a bank is the same crime as robbery of a bank. *United States v. Williams*, 891 F.2d 962, 965 (1st Cir.1989), *United States v. Toles*, 867 F.2d 222, 223 (5th Cir.1989); *contra, United States v. Pologruto*, 914 F.2d 67, 69–71 (5th Cir. 1990).

■ For that reason it might be argued that Guideline § 2B1.1, Application Note 2, should not be applied. Van Boom's crime was complete when he intimidated the bank officers and demanded the $750,000. His conduct was not "partially completed" because his crime was complete.

The answer to this argument is that Guideline § 2B1.1, Application Note 2, does not turn on whether the crime is complete but on whether all of the conduct is complete that will bring money or property to the criminal taking it. Thus, in the examples given, the crime of stealing a government check or the crime of stealing an automobile is complete, but the thief's conduct is only "partially completed." In this particular sense Van Boom's conduct was only partially completed when he demanded the money but did not receive it.

Still, on behalf of Van Boom it might again be argued that Section 2X1.1 explicitly is meant to apply only to attempts "not covered by a specific offense guideline." That this limited scope is announced by Section 2X1.1's caption is indisputable. The caption, however, is modified by the directions of Section 2B3.1 and Section 2B1.1 that lead to the use of Section 2X1.1 to determine "the loss" in an attempted robbery.

The crime that Van Boom committed is one where Congress drew no distinction between taking and attempting to take money from a bank. It is unlikely that Congress intended to distinguish the penalties. The Guidelines are less than literal; their captioning is in this case confusing; their path is roundabout. In the end, it is a path sufficiently marked to be followed, and in following it we reach a result that comports with the statute's terms and the Guidelines' general rule that attempts are to be punished as if they had succeeded.

AFFIRMED.